UNITED STATES of America, ex rel. Linda A. LUJAN, Plaintiffs–Appellants,

v.

HUGHES AIRCRAFT COMPANY, Defendant–Appellee.

No. 00–55328.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 2001

Filed March 22, 2001

SILVERMAN, Circuit Judge:

The False Claims Act (FCA) permits, in certain circumstances, suits by private parties on behalf of the United States against anyone submitting a false claim to the government. In 1986, Congress amended the FCA to include § 3730(b)(5), which provides that "[w]hen a person brings a [qui tam action], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." This appeal requires us to interpret § 3730(b)(5) for the first time. We hold that § 3730(b)(5) establishes an exception-free, first-to-file bar. We further hold that subsequently dismissed cases constitute pending actions under § 3730(b)(5). Finally, we hold that a "material facts," not "identical facts," test should be used to determine if a "related action [is] based on the facts underlying the pending action." § 3730(b)(5). We affirm the district court's dismissal of Lujan's qui tam action for lack of subject matter jurisdiction under § 3730(b)(5).

## I. Background and Proceedings

Linda Lujan and William Schumer, former Hughes Aircraft Company employees, brought separate qui tam claims alleging that Hughes fraudulently used "commonality agreements".[1] Determining whether § 3730(b)(5) bars Lujan's action necessarily involves reviewing Schumer's action.

### A. *United States ex rel. Schumer v. Hughes Aircraft Company*

In 1989, former Hughes manager William Schumer filed a qui tam action against Hughes asserting that Hughes defrauded the United States government by entering into unauthorized and illegal commonality agreements allocating project costs over more than one subcontract. The government declined to intervene.[2]

Daniel I. Davidson, Spiegel & McDiarmid, Washington, D.C., for the plaintiff-appellant.

Mark R. Troy, James J. Gallagher, Michael R. Rizzo and Kevin J. Slattum, McKenna & Cuneo, L.L.P., Los Angeles, California, for the defendant-appellee.

Before: LEAVY, TROTT, and SILVERMAN, Circuit Judges.

1. The Air Force awarded a defense contract for constructing the B-2 bomber to Northrup Corporation, which then in 1982 awarded Hughes a "cost-plus" subcontract to develop the bomber's radar system. Hughes was subsequently awarded "fixed-price" contracts for developing other aircrafts' radar systems. Due to the contracts' significant overlap, Hughes adopted "commonality agreements" allocating costs between various contracts using common components.

2. Government auditors scrutinized costs subject to Hughes' commonality agreements and, in 1986, initially concluded that Hughes had misallocated costs. Subsequent audits between 1986 and 1988 concluded that Hughes had not adequately disclosed its commonality accounting practices. Therefore, the Govern-

In May 1992, the district court found the commonality agreements proper, and granted summary judgment in favor of Hughes.

Schumer appealed and Hughes cross-appealed, arguing "that because government auditors had alleged the same mischarging prior to Schumer's filing, the action was barred under the 'government knowledge' defense, 31 U.S.C. § 3730(b)(4) (1982)." While acknowledging that the 1986 amendments eliminated the government knowledge defense,[3] Hughes argued that the 1986 amendments could not be applied retroactively to Hughes pre–1986 conduct. We held that the 1986 amendments applied retroactively to Hughes' pre–1986 conduct, affirmed the majority of the district court's findings, and remanded two factual issues regarding pre–1986 conduct. See United States ex rel. Schumer v. Hughes Aircraft Co., 63 F.3d 1512, 1528 (9th Cir.1995).

The Supreme Court granted certiorari[4] and reversed, holding that the 1986 amendments could not be applied retroactively to pre–1986 conduct. The Court declined to review the remaining issues and held that the claims should have been dismissed, because the district court did not have jurisdiction over the pre–1986 conduct due to the government knowledge exception.[5] See Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939, 952, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997).

## B. United States ex rel. Lujan v. Hughes Aircraft Company

This is the third appeal in this case.

In February 1992, Lujan filed qui tam claims against Hughes for alleged fraud and retaliation claims for her employment termination.[6] Lujan alleged that Hughes was engaging in fraudulent contracting practices by shifting costs from fixed-price programs to cost-plus programs. Pursuant to 31 U.S.C. § 3730(b)(2), Lujan filed her claim in camera and served it on the Government. While the qui tam claim was

ment ordered Northrop to withhold contract payment to Hughes. After conducting additional audits in 1990 and 1991, the Government reversed its preliminary determination, concluded that the commonality agreements benefitted the Government, and ordered Northrop to pay Hughes. See Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939, 942–43 n. 1, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997).

3. Before 1986, the FCA barred cases brought by qui tam plaintiffs whose allegations were "based on evidence or information the Government had when the action was brought." 31 U.S.C. § 3730(b)(4) (1982). The 1986 amendments eliminate the government knowledge defense. Incorporating the 1986 amendments, § 3730(e)(4) provides:

(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

4. The Supreme Court granted certiorari as to (1) whether the 1986 amendments retroactively applied to pre–1986 conduct, (2) whether Schumer's claims were jurisdictionally barred by the FCA public disclosure provisions, and (3) whether the two factual issues remanded by the Ninth Circuit could give rise to a FCA claim given the government's determination that it had not suffered any financial harm.

5. Schumer's post–1986 conduct claims were decided against Schumer on the merits, and affirmed by the Ninth Circuit. Therefore, while the Supreme Court ordered the case dismissed, the district court should have differentiated between the pre and post–1986 conduct and claims.

6. Lujan's retaliation claim, which the district court and this court held to be time-barred, is not at issue in this appeal.

still under seal and before Hughes had been served with the complaint, the Los Angeles Times ran two articles reporting Lujan's qui tam claim filing. The district court held that Lujan's public disclosure of the existence and substance of her qui tam complaint violated the FCA's statutory seal provision, § 3730(b)(2), and dismissed the action.

We reversed the district court. *See Lujan v. Hughes Aircraft Co. (Lujan I)*, 67 F.3d 242, 248 (9th Cir.1995). We held that the use of dismissal as a sanction was not necessarily the appropriate remedy for Lujan's violation. *See id.* at 247–48. In addition, we held *sua sponte* that before the district court could reach the merits of Lujan's claim, it would have to determine if it had jurisdiction under § 3730(e)(4)(A), which "bars suits brought after the allegations in the complaint have been publicly disclosed, unless the relator is the 'original source' of the information." *Id.* at 248. We noted the similarities between Lujan's complaint and the earlier filed *Schumer* complaint.

In March 1996, the district court found that Lujan's allegations were "substantially similar" and therefore "based upon" those publicly disclosed in *Schumer*:

> Lujan's qui tam allegations are substantially similar to Schumer's previous claims. Lujan attempts to distinguish her allegations by stating that they involve mischarging *within* the B–2 program, while Schumer addressed cost shifting *among* the B–2 program and other aircrafts [F–14D, F–15 MSIP, and F–18]. However, upon reviewing the allegations previously brought by Schumer, the Court finds that Lujan's allegations are simply a variation on Schumer's.
>
> Schumer's claims, like Lujan's involve the B–2 bomber system, which was a massive, billion dollar contract. With such large stakes at hand, the government necessarily performed a thorough review of Schumer's claims as evidenced

by the *Schumer* record and proceedings. Lujan now seeks to create a meaningless distinction between her claims and Schumer's in order to further the government's, and her, interests.

> To give credence to Lujan's microscopically fine distinctions between her allegations and those of Schumer would do injustice to the purposes underlying the False Claims Act. It is the harbinger, not the mimic, who is entitled to champion the government's interests.

Therefore, the district court dismissed Lujan's qui tam claims, holding that the district court did not have jurisdiction to hear the case under § 3730(e)(4).

On appeal, we split Lujan's qui tam claims into two groups: pre and post–1986 conduct. *See United States ex rel. Lujan v. Hughes Aircraft Co. (Lujan II)*, 162 F.3d 1027, 1031 (9th Cir.1998). Following *Schumer*, we affirmed the district court's dismissal of Lujan's qui tam pre–1986 conduct claims, because the government already had knowledge of her claims.[7] *See id.* We reviewed the post–1986 conduct claims to determine if there was subject matter jurisdiction under 31 U.S.C. § 3730(e)(4). We affirmed the district court's finding that *Lujan* and *Schumer's* allegations were substantially similar and therefore constituted "public disclosure" of Lujan's qui tam claims, stating:

> The subject matter of Schumer's action was four defense contracts between Hughes and the United States-the F–14D Program contract ("F14 contract"), the F–15 Radar Multistage Improvement Program Contract ("F15 contract"), the F–18 Radar Upgrade Program Contract ("F18 contract"), and the B–2 Special Programs Contract ("B–2 contract"). The B2 contract involved the design of an advanced radar system for that airplane. Hughes managed each of these contracts under "commonality agreements," which permit each program using a common component to

---

7. Lujan admits that she met with Department of Defense representatives in 1988, three

years before she filed her qui tam complaint. *See Lujan II,* 162 F.3d at 1031.

share in some portion of its development and production costs.

Schumer alleged that Hughes used these commonality agreements to misbid, misallocate, and mischarge costs among the four contracts. For example, Schumer alleged that Hughes charged the development of a radar signal processor to the F15 contract but then also charged these developments costs to the F14, F18, and B2 contracts.

Lujan's allegations also concern the contract to develop the B2 radar system. Lujan alleges that, between 1982 and at least 1989, Hughes routinely mischarged costs associated with the design and development of various B2 radar system contracts. She also alleges that Hughes mischarged costs on contracts involving ·e F14, F15, and F18 by means of the ımonality agreements governing cost ·ations among the various radar sysıε ρrograms.

.ιe Schumer and Lujan allegations both involve cost-sharing transactions among and within the radar system programs on four aircraft. The two claims involve the same commonality agreements and the same radar program contracts.

*Lujan II,* 162 F.3d at 1032–33. We then found that Lujan was an original source because she brought her allegations to the government before Schumer's allegations were publicly disclosed. Therefore, we reversed the district court's dismissal of Lujan's post–1986 claims, holding that the district court had subject matter jurisdiction under § 3730(e)(4)(A)'s "original source" exception.

On remand, Hughes moved to dismiss Lujan's qui tam action under the 31 U.S.C. § 3730(b)(5) first-to-file jurisdictional bar. The district court determined that *Lujan II* had not decided the § 3730(b)(5) issue, and then found that § 3730(b)(5) applied because *Schumer* was pending when Lujan filed her action. The district court reviewed (1) the prior district court findings that the allegations were substantially similar and "based upon" those publicly disclosed in Schumer's lawsuit and (2) our

*Lujan II* upholding of that finding. The district court found that Lujan's claims were "based on" the same essential facts and raised the same issues as Schumer's claims, regardless of whether the two claims incorporated somewhat different details, and held that § 3730(b)(5) barred Lujan's case. Lujan appealed, contending that the district court improperly considered, interpreted, and applied § 3730(b)(5).

## II. Jurisdiction and Standard of Review

■■■ We have jurisdiction under 28 U.S.C. § 1291. We review de novo a district court's legal determinations. *See United States v. Marbella,* 73 F.3d 1508, 1515 (9th Cir.1996). Dismissal for lack of subject matter jurisdiction is reviewed de novo, and the district court's relevant findings of fact are reviewed for clear error. *See United States ex rel. Aflatooni v. Kitsap Physicians Servs.,* 163 F.3d 516, 520–21 (9th Cir.1999).

## III. Analysis

We first determine whether the district court had the power to decide the § 3730(b)(5) jurisdictional challenge. Finding that the district court properly considered the issue, we then determine (1) the proper interpretation of § 3730(b)(5) and (2) if the district court properly applied § 3730(b)(5).

### A. Law of the Case

■■■ Lujan contends that the law of the case doctrine precluded the district court's consideration of Hughes' § 3730(b)(5) jurisdictional challenge. We reject this contention.

■■■ The law of the case doctrine requires a district court to follow the appellate court's resolution of an issue of law in all subsequent proceedings in the same case. *See United States v. Cote,* 51 F.3d 178, 181 (9th Cir.1995). The doctrine does not apply to issues not addressed by the appellate court. *See id.* (quoting *Luckey v. Miller,* 929 F.2d 618, 621 (11th Cir. 1991)). The doctrine applies to the appel-

late court's "explicit decisions as well as those issues decided by necessary implication." *Id.* (quoting *Eichman v. Fotomat Corp.*, 880 F.2d 149, 157 (9th Cir.1989)).

In *Lujan II*, we reversed the district court's dismissal of Lujan's post–1986 claims for lack of subject matter jurisdiction under § 3730(e)(4). While Hughes argued a § 3730(b)(5) jurisdictional challenge to this court, we did not explicitly or implicitly decide that issue. Therefore, the law of the case did not foreclose consideration of the § 3730(b)(5) jurisdiction issue. Even if we had decided the § 3730(b)(5) jurisdictional question in Lujan's favor, we can correct that decision to prevent manifest injustice. *See Southwest Marine Inc. v. Danzig*, 217 F.3d 1128, 1136 (9th Cir.2000) ("prior decision should be followed unless ... the decision is clearly erroneous and its enforcement would work a manifest injustice") (internal quotations omitted).

## B. First–to–File Bar

■ Lujan next contends that § 3730(b)(5) should not bar her case because (1) her action could benefit the U.S. Treasury, (2) she was an original source, (3) she had personal knowledge of specific mischarging, and (4) she informed the government of her allegations and facts before the *Schumer* action. We reject each contention, holding that § 3730(b)(5) does not provide for such exceptions.

■ Section 3730(b)(5) provides that "[w]hen a person brings a [qui tam action], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." In interpreting this provision, we "look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress." *United States v. Hockings*, 129 F.3d 1069, 1071 (9th Cir.1997) (quoting *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 830 (9th Cir.1996)) (internal quotations omitted). If the statute is ambiguous, we consider the legislative history. *See id.* "If a legislative purpose is expressed in plain and unambiguous language, ... the ... duty of the courts is to give it effect according to its terms. Exceptions to clearly delineated statutes will be implied only where essential to prevent absurd results or consequences obviously at variance with the policy of the enactment as a whole." *United States v. Rutherford*, 442 U.S. 544, 551–52, 99 S.Ct. 2470, 61 L.Ed.2d 68 (1979) (quotations and citations omitted).

Section 3730(b)(5)'s plain language unambiguously establishes a first-to-file bar, preventing successive plaintiffs from bringing related actions based on the same underlying facts.[8] Unlike § 3730(e)(4) (the public disclosure jurisdictional bar),[9] § 3730(b)(5)'s plain language does not contain exceptions. Moreover, an exception-free, first-to-file bar conforms with the dual purposes of the 1986 amendments: to promote incentives for whistle-blowing insiders and prevent opportunistic successive plaintiffs. *See, e.g., United States ex rel. LaCorte v. SmithKline Beecham Clinical Lab., Inc.*, 149 F.3d 227, 233–34 (3d Cir. 1998) (discussing legislative history). The first-filed claim provides the government notice of the essential facts of an alleged fraud, while the first-to-file bar stops repetitive claims. We reject Lujan's contentions because they would require this court to read exceptions into the statute's plain language.[10]

**8.** *See, e.g., United States ex rel. Merena v. SmithKline Beecham Clinical Lab., Inc.*, 205 F.3d 97, 102 (3d Cir.2000) ("first-to-file rule of section 3730(b)(5)"); *United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1035 (6th Cir.1994) ("Similarly, the relator must be a true 'whistleblower'; therefore, he is precluded from collecting a bounty ... if someone else has filed the claim first."); *Erickson ex rel. United States v. Am.*

*Inst. of Biological Sci.*, 716 F.Supp. 908, 918 (E.D.Va.1989) ("provision establishes a first in time rule").

**9.** See *Lujan II* for a discussion of § 3730(e)(4). 162 F.3d at 1031–35.

**10.** Even assuming that we were to read a "benefit to the Treasury" exception into the statute, Lujan's argument remains without

## C. Pending Action

██ Lujan argues that because Schumer's action was dismissed it cannot be a "pending" action under § 3730(b)(5).[11] Following § 3730(b)(5)'s plain language, Lujan's action is barred if she brought the claim while *Schumer* was pending. Schumer brought his action in 1989; Lujan brought her action in 1992. Even assuming that Schumer's whole action was dismissed in 1997, five years after Lujan filed her complaint, Schumer's action should still be considered a "pending" action for purposes of § 3730(b)(5) because Schumer's action was pending when Lujan brought her claim. To hold that a later dismissed action was not a then-pending action would be contrary to the plain language of the statute and the legislative intent. *See Rutherford,* 442 U.S. at 551–52, 99 S.Ct. 2470. Dismissed or not, Schumer's action promptly alerted the government to the essential facts of a fraudulent scheme-thereby fulfilling a goal behind the first-to-file rule. Accordingly,

we reject Lujan's argument and hold that *Schumer* was a "pending action" under § 3730(b)(5).

## D. Material Facts Test

██ We must determine if *Lujan* is a "related action based on the facts underlying the pending action [*Schumer*]." § 3730(b)(5). Relying on a single sentence from the Senate Judiciary Report,[12] Lujan contends that we should use an identical, not material facts, test. We reject this contention.

██ Most of the few courts that have addressed § 3730(b)(5) have rejected an identical facts test. The cases' common principle is that "section 3730(b)(5) precludes a subsequent relator's claim that alleges the defendant engaged in the same type of wrongdoing as that claimed in a prior action even if the allegations cover a different time period or location within a company." *United States ex rel. Capella v. United Technologies Corp.,* 1999 WL 464536, at *9 (D.Conn. June 3, 1999) (summarizing the tests used by other courts).[13]

merit. The government knew of Lujan's and Schumer's allegations, and conducted numerous audits between 1985 and 1991. The government declined to intervene in both suits, and concluded that it had *benefitted* from Hughes' use of the commonality agreements.

11. Other circuits have not directly held whether a subsequently dismissed action remains a "pending" action under § 3730(b)(5). The Second Circuit addressed this issue in an unpublished opinion, *United States ex rel. Pentagen Technologies International, Ltd. v. CACI International Inc.,* 1999 WL 55259 (2d Cir. 1999) ("Because [a person's] action, when filed, was based on the same facts underlying the then-pending *Pentagen V,* no federal district court had jurisdiction to entertain his claims."). A district court addressed the issue in dicta, *United States v. Crescent City E.M.S., Inc.,* 946 F.Supp. 447, 450 (E.D.La. 1996) (Section 3730(b)(5) "served to bar [a person] from intervening against the defendants in the pending qui tam litigation, as well as from refiling against the defendants once [the case] was dismissed for lack of subject matter jurisdiction."). Lujan cites *Drake v. Cheney,* 1992 WL 75018 (4th Cir.1992) (unpublished disposition) to support her contention that *Schumer* cannot be considered a pending case. *Drake* is not relevant for purposes of our inquiry.

*Drake* is distinguishable, involving a different statute and actions filed by the same person.

12. "Subsection (b)(5) of section 3730 further clarifies that only the Government may intervene in a qui tam action. While there are few known instances of multiple parties intervening in past qui tam cases, *United States v. Baker–Lockwood Manufacturing Co.,* 138 F.2d 48 (8th Cir.1943), the Committee wishes to clarify in the statute that private enforcement under the civil False Claims Act is not meant to produce class actions or multiple separate suits based on identical facts and circumstances." S.Rep. No. 345, at 25 (1986) *reprinted in* 1986 U.S.C.C.A.N. 5266, 5290.

13. *See, e.g., Cooper, United States ex rel. v. Blue Cross & Blue Shield,* 19 F.3d 562, 567 (11th Cir.1994) (Once a qui tam "suit has been filed by a relator or by the government, all other suits against the same defendant based on the same type of conduct would be barred."); *Capella,* 1999 WL 464536, at *9 ("[S]ection 3730(b)(5) bars a later claim unless: (1) it alleges a different type of wrongdoing, based on different material facts than those alleged in the earlier suit; and (2) it gives rise to a separate recovery of actual damages by the government."); *Hyatt v. Northrop Corp.,* 883 F.Supp. 484, 485 n. 3 (C.D.Cal.1995) ("31 U.S.C. § 3730(b)(5) bars

The Third Circuit, the only appellate court to discuss and apply § 3730(b)(5), rejected an identical facts test. *See LaCorte,* 149 F.3d at 233–34. We find the Third Circuit's reasoning persuasive.

Section 3730(b)(5)'s plain language refers to "related" not "identical" actions. Therefore, we need not review the legislative history. *See Hockings,* 129 F.3d at 1071. Even if the language were considered ambiguous, the single sentence from the legislative history does not compel a different result. Furthermore, an identical facts test would defeat the congressional objectives for the 1986 amendments: "adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of opportunistic plaintiffs who have no significant information to contribute of their own." *United States ex rel. Springfield Terminal Ry. v. Quinn,* 14 F.3d 645, 649 (D.C.Cir.1994). Limiting § 3730(b)(5) to only bar actions with *identical facts would be contrary to* the plain language and legislative intent: (1) using a narrow jurisdictional bar, such as an identical facts test, would decrease incentives to promptly bring qui tam actions; (2) multiple relators would expect a recovery for the same conduct, thereby decreasing the total amount each relator would potentially receive and incentives to bring the suit; and (3) a narrow identical facts bar would encourage piggyback claims, which would have no additional benefit for the government, "since once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds." *LaCorte,* 149 F.3d at 234.

Therefore, we hold that § 3730(b)(5) bars later-filed actions alleging the same material elements of fraud described in an earlier suit, regardless of whether the alle-

qui tam actions based on facts already the subject of earlier filed actions."); *Erickson,* 716 F.Supp. at 918 ("A subsequently filed qui tam suit may continue only to the extent that it is (a) based on facts different from those alleged in the prior suit and (b) gives rise to separate and distinct recovery by the government.").

gations incorporate somewhat different details.

### E. Related Action Based on the Facts Underlying the Pending Action

██ Finally, Lujan contends that the district court erred in relying on our prior § 3730(e)(4) factual determination that *Lujan* was "substantially similar" to and "based upon" *Schumer* to dismiss Lujan's action under § 3730(b)(5). We reject this contention.

While the factual determinations under § 3730(e)(4) (substantially similar) may be different than those under § 3730(b)(5) (same material facts), the district court was bound by the prior factual determinations to the extent that it could not contradict them. *See, e.g., United States v. Houser,* 804 F.2d 565, 567–68 (9th Cir. 1986) (for the law of the case doctrine to apply the issue in question must have been decided in the previous disposition). The district court reviewed the prior factual analyses and determined that the analyses demonstrated that Lujan's claim encompassed the same material facts as Schumer's.

██ Lujan also contends that the district court impermissibly equated facts with allegations, and that § 3730(b)(5) requires an analysis of *Lujan* and *Schumer's* facts, not their allegations. We reject this contention. In motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the reviewing court must accept as true the allegations of the complaint. *See Miranda v. Reno,* 238 F.3d 1156, 1157 n. 1 (9th Cir.2001). For purposes of this inquiry, there is no difference between allegations and the underlying facts.

In *United States ex rel. Dorsey v. Warren E. Smith Community Health / Mental Retardation & Substance Abuse Centers,* 1997 WL 381761 (E.D.Pa.1997), the district court applied an identical facts test. *LaCorte* implicitly overruled *Dorsey* when it applied an essential facts test.

**1190**

Given the prior factual determinations and conclusions, the district court did not clearly err in determining that Lujan's claim was "based on" the same material facts as Schumer's.

AFFIRMED.