OPINION AND ORDER
 

 SARGUS, District Judge.
 

 This matter is before the Court on the Defendants’ Motion to Dismiss Relator’s Claims based upon the First to File Rule (Doc. # 25). For the reasons that follow, the motion is granted.
 

 I.
 

 This action was filed on November 12, 2002 by Jeff Walburn under the False Claims Act, 31 U.S.C. § 3729,
 
 et
 
 seq.. The Act allows an individual,
 
 ie.,
 
 a relator, to bring a
 
 qui
 
 tam
 
 [1]
 
 civil action in the name
 
 *CMLXXX
 
 of the Government. 31 U.S.C. § 3730(b)(1). In this capacity, Plaintiff alleges that the Defendants, Lockheed Martin Corporation and Lockheed Martin Utility Systems, Inc. [“Defendants”], violated the False Claims Act by altering and submitting false invoices for compensation and incentive payments under operating agreements with the United States with respect to the operation of the Portsmouth Gaseous Diffusion Plant [“PGDP”]. The United States chose not to intervene in this action. The Court has jurisdiction pursuant to 28 U.S.C. § 1391(a).
 

 In his First Amended Complaint
 
 [2]
 
 , Plaintiff states that he has been employed as a security officer at the Portsmouth Gaseous Diffusion Plant since 1976.
 
 (First Am. Compl.
 
 at ¶ 14). In this capacity, Plaintiff patrols the Special Nuclear Materials and has access to all areas of the plant.
 
 (Id.
 
 at ¶ 15). The plant performs a gaseous diffusion process to enrich uranium for commercial use as well as for the national defense.
 
 (Id.
 
 at ¶ 8). The plant is owned by the United States and is leased by the United States Enrichment Corporation, an entity created by Congress under the Energy Policy Act of 1992, 42 U.S.C. § 2297,
 
 et seq. (Id.
 
 at ¶9).
 
 [3]
 

 In 1981, thermoluminescent dosimeters [“TLD”] were introduced at the plant to measure the level of individual external exposure to whole body penetrating radiation.
 
 (Id.
 
 at ¶ 18). The TLDs are worn by all employees, subcontractors and visitors of the plant.
 
 (Id.).
 
 The TLDs mechanically measure the dosages of radiation. The readings are recorded and are filed by employee name.
 
 (Id.
 
 at ¶ 19). According to Plaintiff, the TLDs are read approximately every quarter.
 
 (Id.).
 

 Plaintiff alleges that, pursuant to the Energy Policy Act of 1992, 42 U.S.C. § 2297,
 
 et seq.,
 
 Defendants were required to maintain accreditation under the Department of Energy Laboratory Accreditation Program [“DOELAP”].
 
 (Id.
 
 at ¶¶ 21-22). As part of the DOELAP accreditation, Defendants were required to keep records of the dosimeters in use together with the records of a person’s dosage of radiation as shown on a respective TLD.
 
 (Id.
 
 at ¶ 27).
 

 Plaintiff claims that in 1994 he was exposed to gases at the plant.
 
 (First Am. Compl.
 
 at ¶ 30). Plaintiff alleges that sometime thereafter, the Defendants changed the recorded reading of his TLD badge two times.
 
 (Id.
 
 at ¶¶ 32-33). Plaintiff further alleges that the Defendants “make at least four hundred (400) to six hundred (600) changes of TLD readings every year .... ”
 
 (Id.
 
 at ¶ 35). Plaintiff claims that Defendants’ acts are in violation of various DOELAP accreditation procedures as well as certain provisions of 31 U.S.C. § 3729. Plaintiff further claims that the requests for payments made by Defendants under its operating agreements were “false or fraudulent in that Defendants contracted and certified that they were eligible to operate [the plant] when that certification had been obtained
 
 *CMLXXXI
 
 only by concealing [the TLD readings].”
 
 (Id.
 
 at ¶ 43).
 

 The Court notes that, prior to Plaintiffs filing of the First Amended Complaint, the Defendant moved to Dismiss the claims Plaintiff raised in his original complaint. On September 8, 2003, this Court entered an Order finding the Defendant’s motion moot in view of Plaintiffs filing of the First Amended Complaint.
 

 On July 16, 2003, Defendants filed a Motion to Dismiss Plaintiffs First Amended Complaint. (Doc. # 16). On August 15, 2003, Plaintiff filed a Memorandum
 
 contra
 
 the motion together with a Motion for Leave to File a Second Amended Complaint. (Doc. # 19 and # 20). On September 22, 2003, the Defendants filed a Memorandum
 
 contra
 
 the Plaintiffs Motion for Leave to file a Second Amended Complaint as well as a Motion to Dismiss any claim asserted by Plaintiff based on the “First to File Rule.” (Doc. # 24 and # 25). Plaintiff responded to the Defendants’ Motion on November 10, 2003 (Doc. # 31) and, on November 24, 2003, Plaintiff submitted a Motion for Leave to File a Third Amended Complaint. (Doc. # 35). The Defendants filed their opposition to this motion on January 6, 2004. (Doc. # 39 and # 40).
 

 With this procedural history in mind, the Court considers the Defendants’ Motion to Dismiss based upon the First to File Rule, since resolution of this motion will determine whether Plaintiffs claims remain viable.
 
 [4]
 

 II.
 

 In their Motion, the Defendants argue that Plaintiff is barred from pursuing his claims since he was not the first individual to raise allegations against Defendants with respect to alleged fraudulent alterations of TLD readings. According to Defendants, the same allegations were made in the case of
 
 United States ex rel. Kenneth Brooks v. Lockheed Martin Corp., et al.,
 
 8:00-CV-01008 (D.Md.).
 

 The False Claims Act contains a “first to file” rule, which states: “When a person brings [a
 
 qui tarn
 
 action], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.” 31 U.S.C. § 3730(b)(5). This provision bars actions which allege “ ‘the same material elements of fraud’ as an earlier suit, even if the allegations ‘incorporate somewhat different details.’ ”
 
 United States ex rel. Mary R. Hampton v. Columbia
 
 /
 
 HCA Healthcare Corp.,
 
 318 F.3d 214, 217 (D.C.Cir.2003), quoting
 
 United States ex rel. Lujan v. Hughes Aircraft Co.,
 
 243 F.3d 1181, 1189 (9th Cir.2001). As the Ninth Circuit explained in
 
 United States ex rel. Lujan v. Hughes Aircraft Co., supra,
 
 “[s]ection 3730(b)(5)’s plain language unambiguously establishes a first-to-file bar, preventing successive plaintiffs from bringing related actions based on the same underlying facts.... The first-filed claim provides the government notice of the essential facts of an alleged fraud, while the first-to-file bar stops repetitive claims.” 243 F.3d at 1187.
 

 The majority of courts that have considered the first to file rule hold that the actions need not allege identical facts for the later suit to be barred.
 
 See United States ex rel. LaCorte v. SmithKline Beecham Clinical Laboratories, Inc.,
 
 149 F.3d 227, 232-33 (3rd Cir.1998);
 
 United States ex rel. Cooper v. Blue Cross & Blue Shield,
 
 19 F.3d 562, 567 (11th Cir.1994). Section 3730(b)(5) “precludes a subsequent relator’s claim that alleges the defendant en
 
 *CMLXXXII
 
 gaged in the same type of wrongdoing as that claimed in a prior action even if the allegations cover a different time period or location within a company.”
 
 United States ex rel. Capella v. United Technologies Corp.,
 
 No. 3:94-CV-2063, 1999 WL 464536 (D.Conn. June 3, 1999). As many courts have observed, the language of § 3730(b)(5) refers to “related” not “identical” actions.
 

 Accordingly, this Court also holds that the allegations of the later filed action need not be identical to those of the earlier filed action in order to be barred by the first to file rule. With this standard in mind, the Court compares the allegations in this case to those in the earlier filed case of
 
 United States ex rel. Kenneth Brooks v. Lockheed Martin Corp., et al.,
 
 8:00-CV-01008 (D.Md.).
 

 III.
 

 As stated above, Plaintiffs essential allegation in this action is that the Defendants falsified dosage readings obtained from TLD monitors. Plaintiff claims that, as a result, Defendants received payments and accreditation to operate the Portsmouth Gaseous Diffusion Plant from the United States by false means. Plaintiff claims that such fraud was perpetrated from at least 1991 and thereafter.
 

 The allegations raised in
 
 United States ex rel. Brooks v. Lockheed Martin Corporation, et al.,
 
 No. L-00-CV-1088 (D.Md.) are the same as Plaintiffs but more expansive. In this case, Plaintiff was a manager in various roles from 1990 through 1994 at the Portsmouth Gaseous Diffusion Plant.
 
 [5]
 
 Plaintiff claims that “Defendants fraudulently induced the [United States Department of Energy] and the [United States Enrichment Corporation] to pay tens of millions of dollars of costs, fees, awards, and/or incentives to Defendants under contracts requiring Defendants to operate the Portsmouth Gaseous Diffusion Plant .... ”
 
 (Complaint
 
 at ¶ 3 attached as Exhibit A to
 
 Defendants’ Motion to Dismiss Based Upon the First to File Rule).
 
 Plaintiff claims that the Defendants “falsified, concealed and destroyed documentation relating to their management and operations [of the plant] ... to conceal their ongoing misconduct, coercion and deception.”
 
 (Id.
 
 at ¶ 5). Plaintiff Brooks’ complaint goes into great detail as to the types of alleged fraud undertaken by Defendants in the operation of the Portsmouth Gaseous Diffusion Plant. In particular, Plaintiff alleges:
 

 Defendants misled the Government into believing that their performance in managing and operation [the Piketon plant] was acceptable and satisfied the requirements for cost recovery and fees and rewards under the contracts between Government (DOE and USEC) and the Defendants when, in fact, Defendants were knowingly, illegally, recklessly, in bad faith, imprudently, and/or negligently:
 

 (A) exposing workers at the [plant] site and the environment to unnecessary and unlawful risk of danger related to a lack of sound engineering, operations, and management of the plant
 

 (B) exposing workers at the [plant] site to unnecessary and unlawful levels of radioactivity through contact, proximity, contamination, inhalation and ingestion, failing to monitor worker exposures
 
 *CMLXXXIII
 
 properly, and failing to accurately report radiation hazards to the workers and authorities
 

 (C) intentionally failing at [the plant] to report accurately to the proper authorities, system problems, permitting violations, incidents and accidents, waste, and contamination problems, level of radioactivity], quantities of highly hazardous materials, and numerous other contract issues which resulted in fees and awards being paid fraudulently
 

 (D) failing at [the plant] to take properly management actions related to contamination in process materials, monitor radiation prior to shipment of those materials to and from [the plant] site, failing to follow laws regarding the transportation of all hazardous materials or inform shipper and recipients concerning the hazardous materials including contamination
 

 (E) improper disposal and storage of radioactive and/or mixed wastes and operating the plant without normal and reasonable management and controls to evaluate and prevent the imminent risk of danger to the employees, the public and the environment at [the plant].
 

 (Id.
 
 at ¶ 8).
 

 Plaintiff Brooks claims that the Defendants “knowingly made, used, caused to be made or used, false records and statements to get a false and fraudulent claims paid and approved by the Government ... and to cover up continuous nonconfor-mance issues that would have directly affected fees and awards received by the Defendants had the truth been told.”
 
 (Id.
 
 at ¶ 47). Plaintiff Brooks further claims that he was “continually directed to create and approve fabricated documents such as being directed to change Corrective Action Reports to fraudulently coverup intentional noncompliance to United States Government contracts and agreements.”
 
 (Id.).
 

 This Court concludes that the allegations made by Plaintiff in this case are encompassed by the allegations raised by Plaintiff Brooks in
 
 United States ex rel. Kenneth P. Brooks v. Lockheed Martin Corp., et al.
 
 The two actions contain the same material elements of fraud with respect to the allegation that Defendants falsified records, including TLD readings, in order to secure accreditation and payments from the United States. Plaintiff Brook’s complaint to remedy the allege fraud was filed on April 24, 2000. Plaintiff Walburn’s original complaint was filed in this Court on November 12, 2002. Since Plaintiff Walburn’s complaint contains the same material elements of fraud as Brook’s complaint and since Walburn’s complaint was filed second, the Court concludes that this action is barred by the first to file rule, 31 U.S.C. § 3730(b)(5).
 

 In light of this conclusion, the Defendants’ July 16, 2002 Motion to Dismiss the First Amended Complaint is rendered moot. Plaintiffs November 24, 2003 Motion for Leave to File a Third Amended Complaint and his Motion for an Extension of Time to File Response in support of his Motion for Leave to Amend are also rendered moot.
 

 IV.
 

 In light of the foregoing, the Defendants’ Motion to Dismiss based on the First to File Rule (Doc. # 25) is GRANTED. Defendants’ Motion for Oral Argument (Doc. # 47) is DENIED.
 

 The Defendants’ Motion to Dismiss the First Amended Complaint (Doc. # 16), the Plaintiffs Motion for Leave to File a Third Amended Complaint (Doc. #35), and the Plaintiffs Motion for Leave for an Extension of Time to File a Response (Doc. # 45) are rendered MOOT.
 

 This action is hereby DISMISSED. The Clerk is DIRECTED to enter Judg
 
 *CMLXXXIV
 
 ment in favor of the Defendants and against the Plaintiff.
 

 IT IS SO ORDERED.
 

 [1]
 

 .
 
 "Qui tam”
 
 is abbreviated from the Latin phrase "qui tam pro domino rege quam pro si
 
 *CMLXXX
 
 ipso in hae parte seqintur,” meaning one “who sues on behalf of the King as well as for himself.”
 
 United States ex rel. Branhan v. Mercy Health System of Southwest Ohio,
 
 No. 98-3127, 1999 WL 618018, at *4 n. 5 (6th Cir.1999), (citing Black’s Law Dictionary 1251 (6th ed. 1990)).
 

 [2]
 

 . The Court uses the First Amended Complaint since it has been filed. The proposed Second and Third Amended Complaints have been tendered but not filed.
 

 [3]
 

 . From 1956 to 1986, the plant was operated by Goodyear Atomic. In 1986, Martin Marietta Energy Systems, Inc. took over operation of the plant.
 
 (First Am. Complaint
 
 at ¶¶ 11-12).
 

 [4]
 

 . The Court notes that, on February 27, 2004, the Defendants filed a request for Oral Argument on the pending matters in this case. The Court concludes that oral argument is not necessary and thus, the motion (Doc. # 47) is DENIED.
 

 [5]
 

 . Specifically, Plaintiff Kenneth Brooks held the positions of “Quality Assurance Manager, Temporary Assignment as Management Assistant to ES & H Division Manager, Facility Safety Manager, Installation Facility Safety Manager, Total Quality Manager, and Integrated Resources Planning Manager.”
 
 (Complaint
 
 at ¶ 13 attached as Exhibit A to
 
 Defendants' Motion to Dismiss Based Upon the First to File Rule).