*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0479p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JEFF WALBURN,

    *Plaintiff-Appellant,*

  *v.*

LOCKHEED MARTIN CORPORATION; LOCKHEED
MARTIN UTILITY SERVICES, INC.,

      *Defendants-Appellees.*

No. 04-3458

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 02-01109—Edmund A. Sargus, Jr., District Judge.

Argued: April 28, 2005

Decided and Filed: December 20, 2005

Before: SUHRHEINRICH, BATCHELDER, and GIBSON, Circuit Judges.[*]

---

## COUNSEL

**ARGUED:** Steve J. Edwards, Grove City, Ohio, for Appellant. Glenn V. Whitaker, VORYS, SATER, SEYMOUR & PEASE, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Steve J. Edwards, Grove City, Ohio, for Appellant. Glenn V. Whitaker, VORYS, SATER, SEYMOUR & PEASE, Cincinnati, Ohio, for Appellee.

---

## OPINION

---

  JOHN R. GIBSON, Circuit Judge. Relator Jeff Walburn appeals the district court's dismissal of his *qui tam* action brought under the False Claims Act, 31 U.S.C. §§ 3729-33. Walburn's suit alleges that defendant Lockheed Martin altered and submitted false documents for compensation and incentive payments under its agreement with the United States to operate the Portsmouth Gaseous Diffusion Plant in Piketon, Ohio. The district court dismissed the action under the first-to-file bar of 31 U.S.C. § 3730(b)(5). We affirm the dismissal.

---

[*]The Honorable John R. Gibson, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1

Relator Walburn alleges that he was employed as a security officer at the Portsmouth Plant, patrolling areas of the plant used to enrich uranium and store nuclear materials. The plant is owned by the United States and leased by the United States Enrichment Corporation, an entity created by Congress under the Energy Policy Act of 1992, 42 U.S.C. § 2297 (repealed). Lockheed enriches uranium for commercial and national defense purposes at the plant pursuant to a contract with the United States. Walburn alleges that federal law required Lockheed to maintain accreditation with the Department of Energy in order to conduct these operations. Beginning in 1981, employees at the plant were required to wear thermoluminescent dosimeters that would mechanically measure individual doses of radiation exposure. As a condition of its Department of Energy accreditation, Lockheed was required to keep records of the dosimeter readings together with a record of each employee's dosage. Walburn alleges that after he was exposed to gases at the plant in 1994, Lockheed changed the recorded reading of his dosimeter, and that this was just one of at least 400 to 600 such changes Lockheed made to employees' dosage readings each year. He alleges that Lockheed perpetrated this fraud in order to maintain its Department of Energy accreditation and continue to receive payments from the United States under its contract to operate the Portsmouth Plant.

On July 23, 1996, Walburn filed a multi-count action against Lockheed seeking compensatory and punitive damages as a result of his exposure to gases at the Portsmouth Plant. Walburn sought relief in federal court on theories of (1) breach of contract, (2) civil rights violations under 42 U.S.C. § 1983, (3) intentional tort, and (4) loss of consortium. On July 16, 1997, the district court entered an order dismissing the action. On May 25, 2000, Walburn filed the present *qui tam* action under seal with the United States Department of Justice, alleging that Lockheed's falsification of the dosage readings violated § 3729(a) of the False Claims Act. *See* 31 U.S.C. § 3730(b)(2). Following an investigation into Walburn's allegations, the United States declined to intervene. *Id.*; 31 U.S.C. § 3730(b)(4)(B). Walburn elected to prosecute the action himself, and on November 12, 2002, the action was unsealed. *See* 31 U.S.C. § 3730(b)(4)(B). Reviewing Lockheed's motion to dismiss, the district court concluded that Walburn's allegations were encompassed by the allegations in *United States ex rel. Kenneth Brooks v. Lockheed Martin Corp., et al.*, No. Civ. L-00-1088, filed in the District of Maryland on April 24, 2000. Because the *Brooks* complaint was filed first, the district court dismissed Walburn's action for lack of subject matter jurisdiction under the first-to-file bar of 31 U.S.C. § 3730(b)(5). *United States ex rel. Walburn v. Lockheed Martin Corp.*, 312 F.Supp.2d 936, 940-41 (S.D.Ohio 2004). Walburn appeals the dismissal. 28 U.S.C. § 1291.

## I.

We review de novo the dismissal of an action under the False Claims Act for lack of subject matter jurisdiction. *United States ex rel. McKenzie v. BellSouth Telecommunications, Inc.*, 123 F.3d 935, 938 (6th Cir. 1997); *see also United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187 (9th Cir. 2001); *Minnesota Ass'n of Nurse Anesthetists v. Allina Health System Corp.*, 276 F.3d 1032, 1040 (8th Cir. 2002). Because federal courts are courts of limited jurisdiction, the plaintiff must establish subject matter jurisdiction. *McKenzie*, 123 F.3d at 938. We may affirm the district court's dismissal for lack of subject matter jurisdiction on any grounds supported by the record. *Southwest Williamson Cty. Cmty. Ass'n, Inc. v. Slater*, 173 F.3d 1033, 1036 (6th Cir. 1999).

The False Claims Act "provide[s] for restitution to the government of money taken from it by fraud." *United States ex rel. Augustine v. Century Health Services, Inc.*, 289 F.3d 409, 413 (6th Cir. 2002) (quoting *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 551 (1943)). Under the Act's *qui tam* provisions, a private individual may bring a civil action on behalf of the United States against persons who knowingly submit false or fraudulent claims to the government for payment in

violation of 31 U.S.C. § 3729(a).[1]  *See* 31 U.S.C. §§ 3730(b)- (d).  Before proceeding with the suit, a *qui tam* plaintiff must disclose to the government the information on which his or her claim is based. 31 U.S.C. § 3730(b)(2).  If the government chooses to intervene in the action, it assumes the role of lead prosecutor.  *Id.*; 31 U.S.C. § 3730(b)(4)(A), (c)(1).  If the government declines to intervene, the *qui tam* plaintiff may serve the complaint on the defendant and proceed with the action on its own. 31 U.S.C. § 3730(b)(4)(B).  As an incentive to bring such claims, private plaintiffs suing on behalf of the government receive a portion of the funds recovered in a successful suit.  *See* 31 U.S.C. § 3730(d).[2]

The history of the False Claims Act's *qui tam* provisions demonstrates repeated attempts by Congress to balance two competing policies.  *McKenzie*, 123 F.3d at 938 (discussing legislative history); *United States ex rel. Springfield Terminal Ry. Co. v. Quinn,* 14 F.3d 645, 649-51 (D.C. Cir. 1994) (same).  On the one hand, the *qui tam* provisions seek to encourage "whistleblowers to act as private attorneys-general" in bringing suits for the common good.  *See United States ex rel. Taxpayers Against Fraud v. General Elec. Co.,* 41 F.3d 1032, 1041-42 (6th Cir. 1994).  On the other, the provisions seek to discourage opportunistic plaintiffs from bringing parasitic lawsuits whereby would-be relators merely feed off a previous disclosure of fraud. *United States ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 335 (6th Cir.1998) (citing *McKenzie*, 123 F.3d at 942-943).  To further the latter policy, Congress has placed a number of jurisdictional limitations on *qui tam* actions, two of which are relevant here: the first-to-file bar of 31 U.S.C. § 3730(b)(5) and the public disclosure bar of  31 U.S.C. § 3730(e)(4)(A). Under these provisions, if Walburn's *qui tam* action was based upon information previously made public or if the claim had already been filed by another, the district court was required to dismiss the action. *Taxpayers Against Fraud*, 41 F.3d at 1035.  We address the application of each provision in turn.

## II.

The district court dismissed Walburn's action based on  31 U.S.C. § 3730(b)(5), concluding that the allegations contained in an earlier complaint filed against Lockheed by relator Brooks "encompassed" the allegations of Walburn's complaint.  Section 3730(b)(5) provides:

> When a person brings a [*qui tam* action], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.

By its terms, this section "unambiguously establishes a first-to-file bar, preventing successive plaintiffs from bringing related actions based on the same underlying facts."  *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187 (9th Cir. 2001); *see also United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.,* 149 F.3d 227, 232 (3d Cir. 1998).  The first-to-file bar furthers the policy of the False Claims Act in that "[t]he first-filed claim provides the government notice of the essential facts of an alleged fraud, while the first-to-file bar stops repetitive claims."  *Lujan*, 243 F.3d at 1187 (citing *LaCorte*, 149 F.3d at 233-34 (discussing legislative history)).

---

[1] "*Qui tam*" is part of the longer Latin phrase "*qui tam pro domino rege quam pro se ipso in hac parte sequitur,*" which means "who pursues this action on our Lord the King's behalf as well as his own." *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 769 n. 1 (2000).

[2] The size of the bounty varies, but can be as high as thirty percent of the proceeds of a successful suit. 31 U.S.C. § 3730(d).

In deciding whether Walburn's action runs afoul of this bar, we compare his complaint with that in *Brooks*.[3]   *See La Corte*, 149 F.3d at 234.  If both allege "all the essential facts" of the underlying fraud, the earlier-filed *Brooks* action bars Walburn's action, even if Walburn's complaint "incorporates somewhat different details." *Id.* at 232-33; *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 (10th Cir. 2004); *United States ex rel. Hampton v. Columbia/HCA Healthcare Corp*, 318 F.3d 214, 217-18 (D.C. Cir. 2003); *Lujan,* 243 F.3d at 1189.  Both complaints allege that Lockheed defrauded the government in violation of the False Claims Act.[4]   The *Brooks* relator alleges that Lockheed "falsified, concealed and destroyed documentation" relating to "plant management and operations" and knowingly submitted these "false records and statements" to the government, all in an effort to fraudulently induce government payment under Lockheed's contract to operate the Portsmouth Plant.  Walburn alleges that Lockheed maintained its Department of Energy accreditation by "knowingly concealing" its practice of "assign[ing] dosages to a person that differed from the dosages that were read from the [dosimeter] that the same person was wearing," and then "used the [Department of Energy] accreditation, which had been falsely or fraudulently obtained ... to receive payments under the operating agreements for [the Portsmouth Plant]."

In comparing the two complaints, the district court concluded that the broad fraudulent scheme alleged in the *Brooks* complaint "encompassed" the specific subset of fraud regarding the falsification of radiation dosage readings alleged by Walburn.  The district court's conclusion, although undoubtedly correct, is ultimately unremarkable, as the same could be said for any *qui tam* action alleging fraud in connection with any aspect of Lockheed's operation of the Portsmouth Plant to have the misfortune of following behind the vague and broad-ranging allegations of fraud contained in the *Brooks* complaint.  However, the recognition that the haystack of fraud set forth in *Brooks*' complaint, may, as a literal matter, be said to "encompass" the needle of the specific fraud Walburn seeks to bring to the government's attention, does not answer the question before us: whether such a vague and broadly-worded complaint should be given preemptive effect under § 3730(b)(5).

Walburn argues that the *Brooks* complaint should not be given preemptive effect under the first-to-file rule because its allegations are so fatally broad  as to run afoul of the heightened pleading requirements for fraud under Federal Rule of Civil Procedure 9(b). Although not expressly required by the statutory language, we have previously held that a complaint alleging violations of the False Claims Act must allege the circumstances surrounding the fraud with particularity as required by Rule 9(b). *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 641-43 (6th Cir. 2003); *see also Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562-63 (6th Cir. 2003).  We based this conclusion on the False Claims Act's anti-fraud purpose as demonstrated by its text and accompanying legislative history. *See Bledsoe*, 342 F.3d at 641-43. "In complying with Rule 9(b), a plaintiff, at a minimum, must 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the

---

[3]We analyze Walburn's First Amended Complaint as it was the last complaint to have been filed in the district court.  Walburn's subsequent amended complaints were tendered to the district court but never filed.

[4]Section 3729(a) provides, in relevant part:

Any person who--
       (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
       (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
       (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid; [or] . . .
       (7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,
is liable to the United States Government for a civil penalty . . . .

injury resulting from the fraud.'" *Id.* at 643 (quoting *Coffey v. Foamex L.P.,* 2 F.3d 157, 161-62 (6th Cir. 1993)); *accord LaCorte*, 149 F.3d at 234 ("Federal Rule of Civil Procedure 9(b) requires plaintiffs to plead fraud with particularity, specifying the time, place and substance of the defendant's alleged conduct.").

Here, the broad and conclusory allegations of the *Brooks* complaint are legally insufficient under Rule 9(b) because they fail to provide "the time, place, and content" of any allegedly fraudulent claim submitted to the government. The *Brooks* allegations merely set forth that "documents" and "records" relating to the management and operation of the plant were falsified, without specifying the nature of the alleged falsifications. Furthermore, the complaint neither identifies which of the named defendants actually submitted falsified "documents" and "records" to the government, nor which "documents" and "records" contained misrepresentations upon which the government relied. Thus, the *Brooks* complaint's failure to comply with Rule 9(b) rendered it legally infirm from its inception, and therefore it cannot preempt Walburn's action under the first-to-file bar.[5]

Lockheed argues that, notwithstanding the breadth of the *Brooks* allegations, a holding that only a complaint that complies with Rule 9(b) can have preemptive effect under § 3730(b)(5) carves out an exception from the "exception-free" first-to-file bar that undermines its policy of discouraging parasitic suits. *See Lujan*, 243 F.3d at 1187. However, we fail to see how according preemptive effect to a fatally-broad complaint furthers the policy of encouraging whistleblowers to notify the government of potential frauds. *See id.* A complaint that is insufficient under Rule 9(b) is dismissed precisely because it fails to provide adequate notice to the defendant of the fraud it alleges. *See Bledsoe*, 342 F.3d at 643 (requiring a complaint alleging fraud to provide fair notice to defendants to enable them to "prepare an informed pleading responsive to the specific allegations of fraud."). A complaint that fails to provide adequate notice to a defendant can hardly be said to have given the government notice of the essential facts of a fraudulent scheme, and therefore would not enable the government to uncover related frauds. *LaCorte*, 149 F.3d at 234. Indeed, we have previously recognized that it is precisely the heightened pleading requirement of Rule 9(b) that deters would-be relators from making "overly broad allegations" that fail to adequately alert the government to possible fraud in an effort to preclude future relators from sharing in any bounty eventually recovered. *Bledsoe*, 342 F.3d at 642 (quoting *LaCorte*, 149 F.3d at 234).

While there is no indication that the *Brooks* relator worded his complaint in excessively general terms in order to preserve the lion's share of any potential recovery for himself, his broad allegations nonetheless fail to set forth the facts underlying the fraud he alleges as required by Rule 9(b). Walburn's action cannot be "based on the facts underlying" the *Brooks* action when the facts necessary to put the government on notice of the fraud alleged are conspicuously absent from the *Brooks* complaint. Because the *Brooks* action is legally infirm under Rule 9(b), it fails to preempt Walburn's later-filed action despite the fact that the overly-broad allegations of the *Brooks* complaint "encompass" the specific allegations of fraud made by Walburn.

---

[5]Indeed, the lack of specificity in the *Brooks* complaint ultimately proved to be its undoing, as it was dismissed during the pendency of this appeal for failure to plead fraud with particularity as required by Rule 9(b). *See United States ex rel. Kenneth Brooks v. Lockheed Martin Corp., et al.*, No. Civ. L-00-1088, 2005 WL 841997 (D. Md.March 22, 2005). Although we are authorized to "take judicial notice of proceedings in other courts of record," *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (quoting *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969) (citing cases)), we decline to base our decision here on the conclusion reached by the district court in the *Brooks* action. We decline to do so because the ultimate fate of an earlier-filed action does not determine whether it bars a later action under § 3730(b)(5); rather, the question is only whether the earlier action was "pending" at the time the later action was filed. 31 U.S.C. § 3730(b)(5); *see Grynberg*, 390 F.3d at 1279; *Lujan*, 243 F.3d at 1188. Here, the *Brooks* action was still pending when Walburn filed his initial complaint on November 12, 2002 and his First Amended Complaint on June 26, 2003, even if the *Brooks* action was eventually dismissed on March 22, 2005.

## III.

While the *qui tam* provisions of the False Claims Act are designed to encourage corporate whistleblowers, a "relator must be a true 'whistleblower'" in order to bring suit. *United States ex rel. Taxpayers Against Fraud v. General Elec. Co.,* 41 F.3d 1032, 1035 (6th Cir. 1994). To that end, § 3730(e)(4) limits the subject matter jurisdiction of federal courts over *qui tam* actions based upon previously disclosed information. *United States ex rel. McKenzie v. BellSouth Telecommunications, Inc.*, 123 F.3d 935, 938 (6th Cir. 1997). Specifically, the "public disclosure" bar provides:

> (4)(A)No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
> (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4).

In determining whether the jurisdictional bar of § 3730(e)(4) applies to a relator's case, we consider: "(A) whether there has been a public disclosure; (B) of the allegations or transactions that form the basis of the relator's complaint; and (C) whether the relator's action is 'based upon' the publicly disclosed allegations or transactions." *United States ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 330 (6th Cir. 1998); *see also A.D. Roe Co.*, 186 F.3d at 721-23. If the answer is "no" to any of these questions, the inquiry ends, and the *qui tam* action may proceed; however, if the answer to each of the above questions is "yes," then we must determine whether the relator nonetheless qualifies as an "original source" under § 3730(e)(4)(B), in which case the suit may proceed. *Jones*, 106 F.3d at 330.

We have no trouble concluding that Walburn's 1996 complaint in his civil action against Lockheed qualifies as a "public disclosure." The plain language of § 3730(e)(4) includes as a public disclosure the dissemination of information through a "civil hearing." We have interpreted "civil hearing" to include court filings generally, and "a plaintiff's complaint" specifically. *McKenzie*, 123 F.3d at 939; *Jones*, 160 F.3d at 331. In order to determine whether Walburn's 1996 complaint disclosed the "allegations and transactions" forming the basis of his later-filed *qui tam* action we must compare the allegations of the two complaints. As discussed previously, Walburn's *qui tam* action alleges that Lockheed falsified dosage readings obtained from thermoluminescent dosimeters in order to maintain its accreditation and receive payments from the United States under its contract to operate the Portsmouth Plant. In his 1996 suit Walburn alleged, *inter alia*:

> 16. To alert these [Defendants'] employees to any such radiation exposure, certain employees are required to submit urinalysis periodically and there is a dosimeter program. The dosimeter program consists of a monitoring badge that registers an employee's dose exposure to radiation. Certain employees are also required to submit to bioassay urinalysis to detect exposure to various gasses.
>
> 17. Defendants periodically collect the monitoring badges from each individual employee, records any dosage readings from each individual badge, and maintains records of these dosages.

...

19. Defendants altered and/or destroyed its dosimeter records on the amount of radiation Plaintiff Jeff Walburn was exposed to while an employee of Defendants.

...

33. Defendants have failed to perform their obligations and duties under said contract, including but not limited to:

 a) Altering and destroying results of employees [sic] radiation exposure in the dosimeter program ...

...

38. Defendant, by intentionally altering Plaintiff's radiation records and medical records, had violated 10 CFR Part 19 and specifically § 19.12 and 19.13; 29 CFR § 1910.96 and 1910.97; 48 CFR § 952.223-75, § 970.23 et Seq., and § 970.52.

39. This violation of federal law ...

We have previously held that the "allegations and transactions" forming the basis of a *qui tam* have been disclosed "when enough information exists in the public domain to expose the fraudulent transaction or the allegation of fraud." *Jones*, 160 F.3d at 331. When the "misrepresented state of facts and a true state of facts" have been disclosed, there is enough information in the public domain to give rise to "an inference of impropriety." *Id.* at 332 (citing *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 655 (D.C. Cir. 1994)). As in *Jones*, although Walburn's 1996 suit "may not have constituted an explicit, formal allegation of either fraud or the essential elements of fraud, it certainly presented enough facts to create an inference of wrongdoing on the part of [Lockheed]." *Id.* The 1996 complaint disclosed both the misrepresented state of facts: the falsified dosage readings submitted to the government, as well as the true state of facts: the actual dosimeter readings. The allegations of falsified dosage readings in violation of federal law gives rise to an inference of impropriety on the part of Lockheed in its operation of the Portsmouth Plant, and thus effectively alerted the public to the fraud later alleged in Walburn's *qui tam* action.

Furthermore, we conclude that Walburn's *qui tam* action is "based upon" the allegations and transactions disclosed in his 1996 suit. In line with the reasoning of the majority of circuits, we have construed "based upon" broadly to mean "supported by" information previously disclosed. *McKenzie,* 123 F.3d at 940; *Bledsoe*, 342 F.3d at 646; *A.D. Roe*, 186 F.3d at 725; *Jones*, 160 F.3d at 332. Walburn's present action is "supported by" the same alleged falsification of dosage readings alleged in his 1996 suit. To be sure, Walburn's *qui tam* action provides greater detail regarding the falsification of the dosimeter readings than did his 1996 complaint. However, these additional details are insufficient to avoid our broad construction of the public disclosure bar, which precludes individuals who base *any part* of their allegations on publicly disclosed information from bringing a later *qui tam* action. *McKenzie*, 123 F.3d at 940; *Bledsoe*, 342 F.3d at 646; *A.D. Roe*, 186 F.3d at 725; *Jones*, 160 F.3d at 332.

Because we conclude that Walburn's *qui tam* action is based upon allegations and transactions publicly disclosed in his 1996 suit, Walburn must qualify as an "original source" to maintain his suit. 31 U.S.C. § 3730(e)(4)(A) and (B); *see also A.D. Roe*, 186 F.3d at 725 n. 7. An "original source" is "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government

*before* filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B) (emphasis added). Under the law of this Circuit, the individual must have provided the government with the information *prior to any public disclosure* to qualify as an "original source." *McKenzie*, 123 F.3d at 942 (adopting the approach of *United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 690 (D.C. Cir. 1997)). Here, Walburn filed his 1996 action long before he filed his sealed *qui tam* action with the government on May 25, 2000. Walburn's failure to report his allegations of fraud to the federal government before filing his 1996 suit precludes him from enjoying original source status. *Jones*, 160 F.3d at 335 n. 7. Thus, his *qui tam* action is barred under 31 U.S.C. § 3730(e)(4).

## IV.

Because the district court lacked jurisdiction under 31 U.S.C. § 3730(e)(4), its dismissal of Walburn's complaint is affirmed.