**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 7 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

JACK J. GRYNBERG, United States
ex rel.,

      Plaintiff - Appellant,

v.

KOCH GATEWAY PIPELINE
COMPANY; UNITED GAS
PIPELINE COMPANY; KOCH
HYDROCARBON COMPANY;
KOCH INDUSTRIES, INC.; KOCH
EXPLORATION CO.; KOCH
PIPELINE COMPANY, LP; MOBILE
BAY PIPELINE COMPANY; KOCH
OIL COMPANY,

      Defendants - Appellees.

No. 02-8108

---

UNITED STATES OF AMERICA,

      Amicus Curiae.

---

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 99-MD-1606-D)**

---

Jean E. Dubofsky, Jean E. Dubofsky, P.C., Boulder, Colorado (Michael S. Porter,
Law Offices of Michael S. Porter, Wheat Ridge, Colorado, with her on the briefs)
for Plaintiff-Appellant.

Mitchell S. Ettinger, Skadden, Arps, Slate, Meagher & Flom LLP, Washington, D.C. (Jennifer L. Spaziano, Skadden, Arps, Slate, Meagher & Flom LLP, Los Angeles, California, and Michael A. Ceramella, Koch Industries, Inc., Wichita, Kansas, with him on the brief) for Defendants-Appellees.

Sharon Swingle, Attorney, Appellate Staff, Department of Justice, Civil Division, Washington, D.C. (Robert D. McCallum, Jr., Assistant Attorney General, Washington, D.C., Matthew H. Mead, United States Attorney, Washington, D.C., and Douglas N. Letter, Attorney, Appellate Staff, Department of Justice, Civil Division, Washington, D.C., with her on the brief) for Amicus Curiae.

Before **EBEL**, **McKAY** and **LUCERO**, Circuit Judges.

**EBEL**, Circuit Judge.

Relator Jack Grynberg brought this qui tam action under the False Claims Act alleging that the defendants fraudulently measured its natural gas production and thereby underpaid royalties they owed to the United States. The district court dismissed Grynberg's suit pursuant to 31 U.S.C. § 3730(b)(5), the False Claims Act's so-called "first-to-file bar," which prohibits private relators from bringing a related action based on the facts underlying a pending qui tam case. We AFFIRM.

**BACKGROUND**

Defendants (collectively "Koch") are in the business of oil and natural gas exploration, production, purchasing, processing and transportation. According to Grynberg's complaint, some of Koch's natural gas production has for many years

taken place on federal or Indian property. By contract, Koch has been responsible for measuring the natural gas it produced on federal and Indian lands, and those measurements have been used to determine the amount of royalties payable to the United States.

In September 1991, the Precision Company filed a qui tam action against several Koch entities under the False Claims Act. Precision alleged that Koch had fraudulently measured the natural gas it produced on federal and Indian lands, and thus underpaid royalties to the United States. More specifically, Precision alleged that the methods Koch used to defraud the government included, but were not limited to: (1) falsely integrating natural gas measurement charts; (2) miscalibrating gas meters; (3) installing drip valves in certain pipes and collecting the liquid run-off condensate without paying for it; (4) understating the natural gas's British Thermal Unit ("BTU") value; (5) tightening the recording pin on the gas meter to distort measurements; (6) using an orifice place that was sized incorrectly or installed improperly; (7) letting the ink run dry on recording pens and manually filling in the blanks to record less gas flow; and (8) falsely recording the proportion of non-natural gas substances contained in the natural gas produced. Precision filed an amended complaint in August 1992 containing the same substantive allegations.

In July 1997, while the Precision lawsuit was still pending, Grynberg brought the instant action under the False Claims Act's qui tam provision. Like in the Precision case, Grynberg alleged that Koch fraudulently measured the natural gas it produced on federal and Indian land and that it consequently underpaid royalties to the United States.

Some of Grynberg's specific allegations regarding how Koch mismeasured its natural gas production closely mirror those raised by Precision in the prior suit. For instance, Grynberg alleged that Koch improperly calibrated its measurement equipment, recovered condensate without paying for it, understated the BTU value of the natural gas, and used an orifice sized differently than reported. Grynberg also alleged some fraudulent measurement techniques that were not specifically mentioned in the Precision complaint. He claimed, for example, that Koch used natural gas to fuel its own downstream activities without paying for it, created unnecessary obstructions to disrupt gas flow, paid for gas only up to an arbitrary BTU value, regardless of its true BTU value, and misapplied a contractual provision allowing for a two percent error rate in volume measurements by automatically subtracting two percent from its volume figures.

## DISCUSSION

The False Claims Act prohibits, among other things, using a false record or statement to avoid or decrease an obligation to make a payment to the United States government. 31 U.S.C. § 3729(a). This Act may be enforced either by the Attorney General or by a private qui tam relator suing on the government's behalf. 31 U.S.C. §§ 3730(a), (b)(1). If a qui tam relator is successful, he or she receives a certain share of the proceeds of the claim. 31 U.S.C. § 3730(d).

The False Claims Act's qui tam provisions are designed to encourage private citizens to expose fraud but to avoid actions by opportunists seeking to capitalize on public information. United States ex rel. Precision Co. v. Koch Indus., Inc., 971 F.2d 548, 552 (10th Cir. 1992). Accordingly, private parties' opportunities to bring qui tam suits are limited. Among the provisions of the Act restricting qui tam litigation is 31 U.S.C. § 3730(b)(5), known colloquially as the Act's first-to-file bar. It states:

> When a person brings an action under this subsection [a qui tam action], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.

31 U.S.C. § 3730(b)(5) (emphasis added). This provision is a jurisdictional limit on the courts' power to hear certain duplicative qui tam suits. United States ex rel. Lujan v. Hughes Aircraft Co., 243 F.3d 1181, 1183 (9th Cir. 2001).

The district court dismissed Grynberg's action on the ground that it was barred by 31 U.S.C. § 3730(b)(5).[1] It reasoned that the operative claim asserted in both the Precision and Grynberg complaints was that Koch violated the False Claims Act by misrepresenting the amount of natural gas it was taking from federal and Indian lands and underpaying royalties to the United States. The issue we face on appeal is whether Grynberg's suit is a related action based on the facts underlying the pending Precision case. As with all legal questions, our review is de novo. See Benns v. Cont'l Cas. Co., 982 F.2d 461, 462 (10th Cir. 1993).

We judge whether § 3730(b)(5) barred Grynberg's qui tam action by looking at the facts as they existed at the time that action was brought – July 1997. See Smith v. Sperling, 354 U.S. 91, 93 n.1 (1957) ("[T]he jurisdiction of the Court depends upon the state of things at the time of the action brought.")

---

[1] The defendants styled their motion to dismiss as arising under Federal Rule of Civil Procedure 12(b)(1). Yet because the jurisdictional question in this case is intertwined with the merits, we consider it as a motion to dismiss under Rule 12(b)(6). See Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) ("[A] court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case."). We decline to recharacterize the defendants' motion as a summary judgment motion because we need consider only the allegations in Grynberg's complaint and those in the prior Precision action. See 27A Fed. Proc., L. Ed. § 62:520 (2003) (facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment); Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000) ("[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."), abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001).

(quotation omitted). At that time, Precision's 1992 amended complaint was pending in federal district court. If Grynberg's suit was a "related action" based on the facts underlying the 1992 Precision amended complaint, then it was barred from its inception by § 3730(b)(5). See United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc., 149 F.3d 227, 234-35 n.6 (3d Cir. 1998) ("[W]e may decide whether the later complaints allege the same material elements as claims in the original lawsuits simply by comparing the original and later complaints.").[2]

Significantly, § 3730(b)(5)'s first-to-file bar is not limited to situations in which the original and subsequent complaints rely on identical facts. An identical facts test would be contrary to the plain meaning of the statute, which speaks of "related" qui tam actions, not identical ones. See 31 U.S.C. § 3730(b)(5); Lujan, 243 F.3d at 1189. Additionally, such a test would run counter to the purpose of § 3730(b)(5). Once the government is put on notice of its potential fraud claim,

---

[2] It is not relevant that in October 1998 – after Grynberg brought the instant action – the plaintiffs in the Precision case again amended their complaint to raise somewhat different allegations against Koch, or that the Precision action ultimately settled. See Lujan, 243 F.3d at 1188. Additionally, it does not matter that the Precision plaintiffs had moved to file their second amended complaint by the time Grynberg brought the instant case because the district court had not yet granted that motion. See Murray v. Archambo, 132 F.3d 609, 612 (10th Cir. 1998) ("Generally speaking, an amendment that has been filed or served without leave of court or consent of the defendants is without legal effect. It follows, then, that only an amended complaint that is in effect . . . can supercede the original.") (citations omitted).

the purpose behind allowing qui tam litigation is satisfied.  See LaCorte, 149 F.3d at 234 ("[D]uplicative claims do not help reduce fraud or return funds to the federal fisc, since once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds.").  Further, original qui tam relators would be less likely to act on the government's behalf if they had to share in their recovery with third parties who do no more than tack on additional factual allegations to the same essential claim.  See id.

Rather, so long as a subsequent complaint raises the same or a related claim based in significant measure on the core fact or general conduct relied upon in the first qui tam action, the § 3730(b)(5)'s first-to-file bar applies.  Once an initial qui tam complaint puts the government and the defendants on notice of its essential claim, all interested parties can expect to resolve that claim in a single lawsuit.  The pendency of the initial qui tam action consequently blocks other private relators from filing copycat suits that do no more than assert the same material elements of fraud, regardless of whether those later complaints are able to marshal additional factual support for the claim.

Not surprisingly, every other circuit to have addressed this issue has also rejected an "identical facts" test in favor of an "essential claim" or "same material elements" standard.  See United States ex rel. Hampton v. Columbia/HCA Healthcare Corp., 318 F.3d 214, 217-18 (D.C. Cir. 2003) ("We ... hold that

§ 3730(b)(5) bars any action incorporating the same material elements of fraud as an action filed earlier. In doing so we reject another possible test, one barring claims based on 'identical facts.'"); Lujan, 243 F.3d at 1189 ("[W]e hold that § 3730(b)(5) bars later-filed actions alleging the same material elements of fraud described in an earlier suit, regardless of whether the allegations incorporate somewhat different details."); LaCorte, 149 F.3d at 233 ("[T]he district court correctly interpreted the statute as barring a later-filed action alleging the same elements of a fraud described in an earlier suit.").

The essential claim in the 1992 Precision complaint was that Koch employed various fraudulent techniques to mismeasure the natural gas it produced, and used those fraudulent measurements to avoid or decrease its obligation to pay royalties to the United States. That complaint gave notice to both Koch and the government of its allegation that Koch had avoided its royalty obligations by mismeasuring natural gas production, and those parties should have expected fully to litigate that allegation in the Precision lawsuit.

Grynberg's subsequent qui tam action raises this same essential claim. According to Grynberg's complaint, his lawsuit "challenges Defendant's mismeasurement of the volume and wrongful analysis of the heating content of

natural gas, causing substantial underpayments of royalties to the United States."[3]

He has not managed to avoid §3730(b)(5)'s first-to-file bar simply by alleging additional facts relating to how Koch mismeasured the natural gas, even though some of those specific allegations were not mentioned in the Precision complaint. See LaCorte, 149 F.3d at 235-37 (original qui tam action alleging that the defendant fraudulently overcharged the government for blood testing barred subsequent suits that alleged new facts detailing more precisely how the defendant overcharged the government).[4]

For these reasons, the district court correctly held Grynberg's qui tam action barred by 31 U.S.C. § 3730(b)(5).  The judgment is AFFIRMED.

---

[3]  According to Grynberg, natural gas is measured on the basis of two factors: volume and heating content.

[4]  We also reject Grynberg's argument that § 3730(b)(5) cannot apply because he named as defendants some affiliated Koch entities that were not listed as defendants in the Precision suit.  This variation does not change the fact that the Precision and Grynberg complaints alleged the same essential claim of fraud. See Hampton, 318 F.3d at 218 (section 3730(b)(5) barred a claim against a corporation, a subsidiary, and several employees of the subsidiary, even though the prior pending qui tam action named only the corporation itself).  In his complaint, Grynberg alleges that Koch Industries was a defendant in the prior Precision case.