**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 14, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

| | |
|---|---|
| In re: NATURAL GAS ROYALTIES QUI TAM LITIGATION (CO2 Appeals). | Lead Case Pursuant to Consolidated Order: Case No. 08-8004 |
| _____ | |
| JACK J. GRYNBERG, ex rel. United States, | |
|        Plaintiff - Appellant, | |
| v. | Consolidated Appeals: Case Nos. 08-8008, 08-8010, 08-8011, 08-8012 |
| EXXON COMPANY, USA; ATLANTIC RICHFIELD COMPANY; VASTAR RESOURCES, INC.; ARCO OIL AND GAS COMPANY; VASTAR GAS MARKETING, INC.; ARCO PIPE LINE COMPANY; ARCO PERMIAN, d/b/a Atlantic Richfield Company; NATURAL GAS PIPELINE COMPANY OF AMERICA; STINGRAY PIPELINE COMPANY; OCCIDENTAL OIL AND GAS CORPORATION; MIDCON CORP.; MIDCON GAS SERVICES CORP.; OCCIDENTAL ENERGY VENTURES CORP.; MIDCON TEXAS PIPELINE OPERATOR, INC.; PLACID OIL COMPANY; OXY USA INC.; MIDCON MARKETING CORP., CROSS TIMBERS OIL COMPANY; CROSS TIMBERS OPERATING COMPANY; CROSS TIMBERS ENERGY SERVICES, INC.; | |

RINGWOOD GATHERING
COMPANY; TIMBERLAND
GATHERING & PROCESSING
COMPANY,

        Defendants - Appellees.

## ORDER

Before **MURPHY**, **McKAY** and **McCONNELL**, Circuit Judges.


These matters are before the court on the appellees' *Unopposed Motion To Recall Mandate For Correction of Errors In Panel Decision*. Upon consideration, the request is granted. The mandate issued originally on April 8, 2009 is recalled. The Clerk of Court is directed to file the amended opinion attached to, and incorporated in, this order. That decision shall reissue nunc pro tunc to March 17, 2009, the original filing date. The newly recalled mandate shall reissue forthwith upon filing of the amended decision.

        Entered for the Court


        Elisabeth A. Shumaker
        Clerk of Court

FILED
United States Court of Appeals
Tenth Circuit

**March 17, 2009**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENH CIRCUIT

---

| | |
|---|---|
| In re: NATURAL GAS ROYALTIES QUI TAM LITIGATION (CO2 Appeals). | Lead Case Pursuant to Consolidated Order: Case No. 08-8004 |
| _____ | |
| JACK J. GRYNBERG, ex rel. United States, | |
| Plaintiff - Appellant, | |
| v. | Consolidated Appeals: Case Nos. 08-8008, 08-8010, 08-8011, 08-8012 |
| EXXON COMPANY, USA; ATLANTIC RICHFIELD COMPANY; VASTAR RESOURCES, INC.; ARCO OIL AND GAS COMPANY; VASTAR GAS MARKETING, INC.; ARCO PIPE LINE COMPANY; ARCO PERMIAN, d/b/a Atlantic Richfield Company; NATURAL GAS PIPELINE COMPANY OF AMERICA; STINGRAY PIPELINE COMPANY; OCCIDENTAL OIL AND GAS CORPORATION; MIDCON CORP.; MIDCON GAS SERVICES CORP.; OCCIDENTAL ENERGY VENTURES CORP.; MIDCON TEXAS PIPELINE OPERATOR, INC.; PLACID OIL COMPANY; OXY USA INC.; MIDCON MARKETING CORP., CROSS TIMBERS OIL COMPANY; CROSS TIMBERS OPERATING COMPANY; CROSS TIMBERS ENERGY SERVICES, INC.; | |

RINGWOOD GATHERING
COMPANY; TIMBERLAND
GATHERING & PROCESSING
COMPANY,

Defendants - Appellees.

**APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. Nos. 99-MD-1293-WFD, 99-MD-1621-WFD, 99-MD-1665-WFD,
99-MD-1668-WFD, 99-MD-1672-WFD)**

Elizabeth L. Harris, (Jeffrey A. Chase, with her on the briefs), Jacobs Chase Frick Kleinkopf & Kelley, LLC, Denver, Colorado, for Plaintiff-Appellant.

John F. Shepherd, (Elizabeth A. Phelan, Holland & Hart, LLP, Denver, Colorado, Robert S. Salcido, Akin, Gump, Strauss, Hauer & Feld, LLP, Washington, D.C., Taylor F. Snelling, ExxonMobil Corporation, Houston, Texas, for appellee Exxon Company, USA; M. Benjamin Singletary and Dennis Cameron, Gable & Gotwals, Tulsa, Oklahoma, for Oxy-USA, Inc.; Robin F. Fields and Charles B. Williams, Conner & Winters, Oklahoma City, Oklahoma, for Cross Timbers Operating Company, et al.; Charles L. Kaiser and Charles A. Breer, Davis Graham & Stubbs, LLP, Denver, Colorado, for ARCO Oil and Gas Co., et al.; Donald I. Schultz, Schultz & Belcher, LLP, Cheyenne, Wyoming, for Liason Counsel, with him on the brief) Holland & Hart, LLP, Denver, Colorado, for Coordinated Defendants-Appellees.

Before **MURPHY**, **McKAY** and **McCONNELL**, Circuit Judges.

**McCONNELL**, Circuit Judge.

In 1997 and 1998, relator Jack Grynberg brought a number of qui tam suits against natural gas pipeline companies and their affiliates for alleged

-2-

underpayment of royalties in violation of 31 U.S.C. § 3729(a)(7) of the False Claims Act ("FCA").[1]  Seven of these suits alleged that the defendants had underpaid royalties on the carbon dioxide ("$CO_2$") they produced from federal and Indian lands by paying based on an artificially deflated value rather than the actual market value of $CO_2$.  The district court found these suits jurisdictionally barred by the first-to-file rule of 31 U.S.C. § 3730(b)(5) because a 1996 suit had alleged the same essential facts.  That prior suit had named as defendants two of Mr. Grynberg's current defendants, mentioned three of the current defendants by name but without joining them as parties,[2] and had not mentioned two of the current defendants at all.  The district court held that a prior action does not have to be against a party in order to bar a subsequent action under the first-to-file bar, so long as the party is "readily identifiable" from the prior action.  Mr. Grynberg appeals the district court's dismissal only with regard to the four defendants who were not parties to the prior action.  We reverse.

## I. Background

---

[1] Of the six related appeals originally filed and consolidated by this court, the parties stipulated to voluntarily dismissed two of those appeals during the course of appellate proceedings.  The dismissed appeals were: 08-8007 and 08-8009.

[2] One of these defendants was Amerada Hess.  While the defendants' motion for dismissal was pending in the district court, Mr. Grynberg settled and released all of his claims against Amerada Hess.  That claim is not currently on appeal.

-3-

Mr. Grynberg filed numerous qui tam suits against natural gas pipeline companies and their various parents, subsidiaries, and affiliates in 1997 and 1998, alleging a variety of ways in which these companies had allegedly underpaid natural gas royalties owed to the federal government. Mr. Grynberg's primary claims alleged underreporting of the heating content and volume of natural gas through various mismeasurement techniques.[3] Seven of his claims, however, concerned the production of $CO_2$, in which Mr. Grynberg alleged that the companies underpaid royalties not by underreporting the volume of $CO_2$ but by undervaluing its worth. These "$CO_2$ Claims" were brought against Mobil Exploration & Producing U.S., Inc. ("Mobil"); Shell Land and Energy Co. and Shell Western E&P, Inc. (collectively, "Shell"); Exxon Co., USA ("Exxon"); Amerada Hess Corp. ("Amerada Hess"); ARCO Oil & Gas Co. and ARCO Permian, d/b/a Atlantic Richfield Co. (collectively, "ARCO"); Oxy-USA; and Cross Timbers Operating Co. ("Cross Timbers"). The complaints against each defendant included an allegation virtually identical to this one, from the Exxon complaint:

> Defendant Exxon Company, U.S.A. produces carbon dioxide from at least the Royalty Properties attached at Exhibit "C." Under applicable law, Defendant must pay royalties based upon the fair

[3]The district court found that Mr. Grynberg's claims alleging the mismeasurement of heating content and volume were jurisdictionally barred by the public disclosure rule of § 3730(e)(4). Those dismissals are the subject of a separate appeal. *See In re Natural Gas Royalties Qui Tam Litigation*, No. 06-8099.

> market value of the carbon dioxide so produced. Defendant
> knowingly underpays royalties by paying based upon an assumed
> value of the carbon dioxide which is significantly below its true fair
> market value. Purely by way of example, carbon dioxide is presently
> sold for $2.87 per MCF on the open market; yet Defendant pays
> royalties based upon a value of less than one-fifth that price.

Exxon Am. Compl. ¶ 55.

Mr. Grynberg's $CO_2$ claims were similar to those in another qui tam action filed by a different relator the previous year. In *$CO_2$ Claims Coalition v. Shell Oil Co. et al.*, No. 96-Z-2451 (D. Colo.), a coalition of royalty owners, small share working interest owners, and taxing authorities brought suit under the False Claims Act against Shell and Mobil, alleging that those companies had controlled and depressed the wellhead price of $CO_2$ produced from the McElmo Dome field in southwest Colorado (the "*Coalition* complaint"). As small share working interest owners of the $CO_2$ produced at the McElmo Dome field, the *Coalition* plaintiffs could not sell their $CO_2$ independently, but instead entered into contracts with the large share working interest owners at the field, Shell and Mobil. Shell and Mobil would then pay the plaintiffs a royalty on all $CO_2$ sales based on the wellhead price of $CO_2$. The royalties they owed the federal government were likewise based on these underlying agreements.

Shell and Mobil, however, were not only producers of $CO_2$, but also consumers of that very gas, using it in their production of crude oil. In their vertically-integrated operations, Shell and Mobil would transport the $CO_2$ from

the McElmo Dome field to their oil fields in west Texas, using a pipeline jointly owned by both companies. According to the *Coalition* complaint, this enabled Shell and Mobil to depress the wellhead price of $CO_2$ in a number of ways: Whereas a producer of $CO_2$ would normally have an interest in demanding the highest price possible, because Shell and Mobil were also the consumers of that $CO_2$, they preferred a lower wellhead price so that they could shift the profits to the oil side of the operation and avoid paying higher royalties. The price they based the royalty payments on failed to include the in kind value that Shell and Mobil were receiving. Furthermore, because they owned the pipeline, they could artificially inflate the transportation costs; because the wellhead price is calculated as the delivered price minus the pipeline tariff, this would further reduce the royalties they had to pay.

Although the *Coalition* complaint brought actual claims against only Shell and Mobil, it identified four other major oil companies that owned working interests in the McElmo Dome field, including present-defendant ARCO. In addition, it identified Exxon, ARCO, Amerada Hess, and others as initiating similar $CO_2$ projects in the Sheep Mountain and Bravo Dome fields. The *Coalition* plaintiffs also brought an antitrust claim against Shell and Mobil, alleging that they had conspired with other oil companies to fix the price of $CO_2$. It specifically identified Exxon, ARCO, and Amerada Hess as companies who had a level of control over production and transportation at the Bravo Dome field that

would allow them to effect a similar pricing scheme there.   The complaint did not, however, assert an actual antitrust claim against anyone but Shell and Mobil.

When Mr. Grynberg filed his 1997 qui tam suits against Shell, Mobil, Exxon, ARCO, Amerada Hess, Oxy-USA, and Cross Timbers, the defendants moved for dismissal under the first-to-file rule of § 3730(b)(5).   That provision states:

> When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.

31 U.S.C. § 3730(b)(5).  According to the defendants, Mr. Grynberg's current qui tam action was a "related action based on the facts underlying the pending action," that pending action being the *Coalition* claims.  Mr. Grynberg argued that to the extent his current action advanced claims against parties who were not named in the *Coalition* complaint or involved different oil fields, such as Sheep Mountain and Bravo Dome, they are unrelated to the *Coalition* complaint and not jurisdictionally barred under the first-to-file rule.

The Special Master found that the undervaluation claims against Shell and Mobil were premised on the same underlying conduct that the *Coalition* complaint was based on, and that Mr. Gryberg's complaints against Shell and Mobil had "fail[ed] to allege a different type of wrongdoing, based on different material facts than those alleged in the *Coalition* Complaint."  Rep. & Rec. 13.  This was so even though Mr. Grynberg's allegations of fraud extended beyond the McElmo

-7-

Dome field. *Id.* The Special Master found the claims against Exxon, ARCO, and Amerada Hess more difficult, as the *Coalition* complaint had not brought claims against those defendants. Nonetheless, the Special Master found that those defendants "were specifically identified in the *Coalition* Complaint, and were accused of being participants in a conspiracy to depress the price of $CO_2$ by setting an assumed value that was significantly below its actual fair market value," *id.* at 14, which "placed the government on notice of the essential facts of the fraudulent scheme, the participants therein, and the geographic locations where the scheme was utilized." *Id.* at 15. The Special Master did not, however, recommend dismissal of the suits against Oxy-USA and Cross Timbers, because the *Coalition* complaint never mentioned those parties by name or description. *Id.*

The district court accepted the Special Master's recommendation in part and rejected it in part, finding that the first-to-file bar applied not only to Shell, Mobil, Exxon, ARCO, and Amerada Hess, but also to Oxy-USA and Cross Timbers. It found that by alleging facts that suggested fraud in the Bravo Dome field, the *Coalition* complaint had put the government on notice that Oxy-USA and Cross Timbers, who operated in that field, were involved in similar wrongdoing. "As companies owing royalty obligations to the United States on the production of $CO_2$," the district court said, "all potential participants in the conspiratorial scheme are *readily identifiable* by the government." Dist. Ct. Op. 7

(emphasis added).  By using the readily identifiable standard to determine which suits were barred by the first-to-file rule, the court found that all of the $CO_2$ defendants fell under the rule's reach.

Mr. Grynberg has not appealed the dismissal of his claims against Shell and Mobil, who were named as parties in the *Coalition* complaint, or against Amerada Hess, but has appealed the dismissal of his claims against the other defendants. He argues that the district court erred in using a "readily identifiable" standard and that the first-to-file bar should not apply when the current defendants were not parties to the pending action.

## II.  Analysis

### A.  Role of Jurisdictional Bars in the False Claims Act

Section 3730(b)(1) of the False Claims Act gives a private citizen the right to bring a cause of action on behalf of the United States government; in return, the citizen recovers a portion of the damages for himself.  This encourages citizens who know of fraud against the government to bring that fraud to light and assist in enforcement, but also carries with it the risk of parasitic suits brought by relators who add little in value but siphon off part of the government's recovery (or, in the case of a meritless claim that the government has chosen not to pursue, perhaps to coerce a settlement through the threat of expensive litigation). Congress has therefore included a number of provisions that "further[] the golden mean between adequate incentives for whistle-blowing insiders with genuinely

valuable information and discouragement of opportunistic plaintiffs who have no significant information to contribute of their own." *United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*, 540 F.3d 1180, 1184 (10th Cir. 2008); *see also United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 552 (10th Cir. 1992) ("Section 3730–Civil actions for false claims, has two basic goals: 1) to encourage private citizens with first-hand knowledge to expose fraud; and 2) to avoid civil actions by opportunists attempting to capitalize on public information without seriously contributing to the disclosure of the fraud.").

One such provision is the public disclosure bar of 31 U.S.C. § 3730(e)(4)(A), which removes jurisdiction over an action "based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or [GAO] report, hearing, audit, or investigation, or from the news media." The public disclosure bar has an exception for when "the person bringing the action is an original source of the information." *Id.* To qualify as an original source, the individual must have "direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B). The public disclosure bar is thus chiefly designed to separate the opportunistic relator from the relator who has genuine, useful information that the government lacks. With this in mind, we have held that a disclosure need not

-10-

identify a defendant by name to trigger the public disclosure bar, so long as the disclosures are "sufficient to set the government on the trail of the fraud as to [the] Defendants." *In re Natural Gas Royalties Qui Tam Litigation*, No. 06-8099, at 15; *see also United States ex rel. Fine v. Sandia Corp.*, 70 F.3d 568, 571 (10th Cir. 1995). If the government can "readily identify" the defendant from the public disclosure, then the bar is triggered unless the plaintiff can show he is an original source. *In re Natural Gas Royalties Qui Tam Litigation*, No. 06-8099, at 7.

Although the district court dismissed Mr. Grynberg's mismeasurement claims under the public disclosure bar, it applied a different bar—the first-to-file provision of § 3730(b)(5)—to his $CO_2$ claims. We have described this provision, like the public disclosure bar, as functioning to weed out parasitic claims. *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 (10th Cir. 2004) ("Once the government is put on notice of its potential fraud claim, the purpose behind allowing qui tam litigation is satisfied."). But we have also recognized its additional purpose of creating an incentive for relators with valuable information to file—and file quickly. *See id.* ("Further, original qui tam relators would be less likely to act on the government's behalf if they had to share in their recovery with third parties who do no more than tack on additional factual allegations to the same essential claim."); *see also Wisconsin v. Amgen, Inc.*, 516 F.3d 530, 532 (7th Cir. 2008) ("Congress didn't want these bounty hunters piling into the first-

filed suit and fighting over the division of the spoils, or, to the same end, bringing separate such suits."); *Campbell v. Redding Med. Center*, 421 F.3d 817, 821 (9th Cir. 2005) ("This is the first-to-file bar, which encourages prompt disclosure of fraud by creating a race to the courthouse among those with knowledge of fraud."). The first-to-file bar thus functions both to eliminate parasitic plaintiffs who piggyback off the claims of a prior relator, and to encourage legitimate relators to file quickly by protecting the spoils of the first to bring a claim.

**B.     Text of § 3730(b)(5)**

According to the defendants, we need look no further than the text of the statute to see that two claims need not involve the same parties in order to apply the first-to-file bar. Section 3730(b)(5), they say, prohibits "related action[s] based on the *facts* underlying the pending action" (emphasis added). The focus is on the facts, not the parties. If Congress wanted to bar suits only when the parties were identical, defendants say, it would have barred claims based on pending actions "in which the defendant is already a party." *Cf.* 31 U.S.C. § 3730(e)(3) (barring actions "based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding *in which the Government is already a party*") (emphasis added).

The statute's use of the word "facts" rather than "parties," however, does not inevitably lead to the conclusion that a pending suit against one party can bar suit against a different party. The identity of a defendant is a fact. To fall under

-12-

the first-to-file bar, however, an action need not mirror *every* fact in the pending claim. In determining whether a qui tam action is a "related action based on the facts underlying the pending action," we have adopted an "essential claim" or "same material elements" standard. *Grynberg*, 390 F.3d at 1279; *see also United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 217–18 (D.C. Cir. 2003). The question is whether the "fact" of a party's identity is a "material element" necessary to consider the two actions as stating the same "essential claim."

The defendant's identity is a material element of a fraud claim. Two complaints can allege the very same scheme to defraud the very same victim, but they are not the same claim unless they share common defendants. Multiple parties can defraud the government through identical schemes. While we might consider a complaint that alleges an additional method of defrauding the government to state the same essential claim, we would not consider a complaint against an entirely different defendant to be stating the same claim. There is a difference between a relator who simply tacks on an additional piece of evidence (a secret memo admitting to the fraudulent scheme, for instance) and a relator who alleges a scheme committed by a different party. The former might make it easier to prove a material element of the fraud and might even be the difference between success at trial or failure, but the latter asserts a different claim, seeking distinct damages arising out of a separate injury caused by another party. The

-13-

identity of a defendant constitutes a material element of a fraud claim, which, under our "same material elements" standard, brings it under the statutory definition of "facts" upon which the action is based.

The defendants note that we have applied the first-to-file bar when two actions did not name the same defendant, but instead named different members of the same corporate family. *Grynberg*, 390 F.3d at 1280 n.4; *see also United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 218 (D.C. Cir. 2003). When defendants are part of the same corporate family, however, they will often be jointly liable for the same underlying conduct. Cases involving parents, subsidiaries, and other corporate affiliates might therefore require deviations from the general requirement that claims must share common defendants in order to trigger the first-to-file bar. *See United States ex rel. Branch Consultants v. Allstate Ins. Co.*, --- F.3d ----, 2009 WL 388947, at *8 (5th Cir. Feb. 18, 2009) (holding that § 3730(b)(5) did not bar suit against unnamed, unrelated defendants, and distinguishing *Hampton* and *Grynberg* on the grounds that those defendants were corporate affiliates). As none of the present defendants are affiliated with Mobil or Shell, we need not address the full contours of § 3730(b)(5) in that unique situation.

## C.     Structure of FCA

-14-

Looking at the first-to-file bar in the context of the larger FCA shows how odd a notice-based "readily identifiable" standard would be. That standard, after all, is how we judge whether the public disclosure bar of § 3730(e)(4) has been triggered. Even without the first-to-file bar, a qui tam complaint filed by a different relator would qualify as a public disclosure and would bar suit against a defendant who, though not named in the complaint, was nonetheless implicated in the fraud. The public disclosure bar already removes jurisdiction from suits brought by relators who simply feed off another relator's complaint and offer no useful information to government officials who should already be on notice of the fraud. Applying that standard to the first-to-file bar will do no more to weed out opportunistic relators than the public disclosure bar already does.

What that standard *would* do if applied in the first-to-file bar context, however, is bar some legitimate relators who are the original source of the information. Congress carefully calibrated § 3730(e)(4) so that it excludes relators when publicly disclosed information was already sufficient to put the government on the trail of the fraud, but then retains jurisdiction for those relators whose suits were based on their own direct or independent knowledge. This original source exception acknowledges that not every relator whose suit would be barred by the public disclosure bar is a parasite. Often, the suit is the result of their own independent information. Allowing an original source to bring an action even when the government should be on notice of the fraud serves the

purposes of the FCA by increasing valid enforcement actions. The government could lack the resources (or, indeed, the political will) to pursue a claim, even if it has been set on its trail. The government might lack sufficient evidence of its own to win in court. In these cases, qui tam suits provide a valuable way to deter false claims and compensate the government for its lost revenue. So long as the relator can meet the original source standard of § 3730(e)(4)(B), he can proceed with his suit and further the goal of citizen-assisted enforcement.

The first-to-file bar, in contrast, lacks an original source exception. If we broadened the first-to-file bar to reach all pending actions that would qualify as public disclosures, we would obliterate the original source exception whenever the public disclosure is a pending qui tam suit. Congress specifically identified allegations disclosed in civil hearings as public disclosures that are subject to the original source exception. To remove the original source exception whenever the civil hearing is the result of a qui tam suit would remove jurisdiction from a significant swath of non-opportunistic claims. We would lose the value of valid enforcement action in the process, and false claims would go unremedied.

Requiring a common identity between defendants when applying the first-to-file bar makes more sense within the overall structure of the FCA. While the bar does eliminate opportunistic relators, most of these relators would be eliminated by the public disclosure bar anyway. Its true value lies in protecting the recovery of the first relator who files, even when other legitimate relators

-16-

might exist with direct and independent knowledge of their own. This maintains the monetary incentive to bring a qui tam action by avoiding division of the spoils. It also encourages a relator to hurry up and file. When the pending action is against an entirely different defendant, however, the two relators are not fighting over the same spoils. The first relator's recovery remains unaffected whether the second relator files or not. If that second relator brings nothing to the table that the first suit had not already offered, then his suit will be barred under the public disclosure bar; otherwise, the purposes of the FCA are best vindicated by allowing his suit to proceed.

The fact that § 3730(b)(5) applies only when another qui tam action is "pending" makes a notice-based standard even more dubious. If the first-to-file bar had been meant simply as a more draconian public disclosure bar, Congress would not have limited it to "pending" actions. While filing the complaint might put the government on notice, and while the government might remain on notice while the action is pending, the government does not cease to be on notice when a relator withdraws his claim or a court dismisses it. And yet, if that prior claim is no longer pending, the first-to-file bar no longer applies. The "pending" requirement much more effectively vindicates the goal of encouraging relators to file; it protects the potential award of a relator while his claim remains viable, but, when he drops his action another relator who qualifies as an original source

may pursue his own.

The disparate methodologies that courts use to analyze the two bars shows a further difference. The first-to-file bar is designed to be quickly and easily determinable, simply requiring a side-by-side comparison of the complaints. *See Grynberg*, 390 F.3d at 1279; *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 235 n.6 (3d Cir. 1998) ("Because we may decide whether the later complaints allege the same material elements as claims in the original lawsuits simply by comparing the original and later complaints, further factual development is unnecessary."). The public disclosure bar, in contrast, will often require the court to look beyond the face of the public disclosure itself. When a court determines whether a disclosure was sufficient to put the government on the trail of the fraud, it considers not only what was said in the disclosure, but also whether the government had the ability to then investigate the potential fraud. The nature of the relationship between the government and the defendants, the level of oversight exercised by the government, and the number of potential wrongdoers will be relevant to the government's ability to uncover the fraud and will rarely be evident on the face of the disclosure itself. *See, e.g.*, *In re Natural Gas Royalties Qui Tam Litigation*, No. 06-8099, at 14–15. If we were to adopt the same notice-based standard for the first-to-file bar that we use for the public disclosure bar, we would also have to change the way courts examine first-to-file challenges. Doing so would add cost and time to what

-18-

should be a straightforward process.

### III. Conclusion

While the allegations in the *Coalition* complaint might have been sufficient to put the government on notice of the fraud that Mr. Grynberg alleges against Exxon, ARCO, Oxy-USA, and Cross Timbers, that complaint did not name any of these parties as defendants. This is so even though the *Coalition* complaint specifically identified Exxon and Arco, for without naming them as defendants, the two actions cannot be said to state the same essential claim. Mr. Grynberg's current claims might have trouble surmounting § 3730(e)(4)'s public disclosure bar, but they are not barred by § 3730(b)(5)'s first-to-file bar. We **REVERSE** the district court's dismissal for lack of jurisdiction as to Exxon, ARCO, Oxy-USA, and Cross Timbers, and **REMAND** for further proceedings not inconsistent with this opinion.